IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
EASTERN DIVISION

_____

| | |
|---|---|
| **MELISSA GAYLE FERGUSON,** | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) No. 18-cv-01152-TMP |
| **NANCY A. BERRYHILL,** Acting | ) |
| Commissioner of Social | ) |
| Security, | ) |
| | ) |
| Defendant. | ) |

_____

**ORDER AFFIRMING THE COMMISSIONER'S DECISION**
_____

Before the court is plaintiff Melissa Ferguson's appeal from a final decision of the Commissioner of Social Security ("Commissioner") denying her application for disability insurance benefits under Title II of the Social Security Act ("Act"), 42 U.S.C. §§ 401 *et seq*. (ECF No. 1.) After the parties consented to the jurisdiction of the United States magistrate judge, pursuant to 28 U.S.C. § 636(c), this case was referred to the undersigned. (ECF No. 8.) For the following reasons, the Commissioner's decision is affirmed.

## I. FINDINGS OF FACT

Ferguson applied for disability benefits under Title II of the Act on January 14, 2015, with an alleged onset date of August 9, 2014. (R. 168.) The Social Security Administration ("SSA") denied Ferguson's application initially and upon reconsideration. (R. 93,

97.) At Ferguson's request, a hearing was held before an Administrative Law Judge ("ALJ") on July 21, 2017. (R. at 103, 131.) On November 1, 2017, the ALJ issued a decision denying Ferguson's request for benefits after finding that she was not under a disability because she retained the residual functional capacity ("RFC") to perform jobs that exist in significant numbers in the national economy. (R. 15-25.) In her decision, the ALJ concluded that Ferguson has the following severe impairments: "cervical degenerative disc disease; disorders of the thyroid; history of lung cancer with resections; and disorders of the pancreas status-post Whipple procedure." (R. 18.) However, the ALJ found that Ferguson did not have an impairment or combination of impairments listed in or medically equal to one of the listed impairments contained within 20 C.F.R. Part 404, Subpart P, Appendix 1. (R. 19.) The ALJ then concluded that Ferguson retains the RFC to:

> perform the sedentary work as defined in 20 C.F.R. 404.1567(a) with the ability to: occasionally climb, balance, stoop, kneel, and crouch, but never crawl; frequently handle, finger, and feel with the non-dominant left upper extremity; must avoid concentrated exposure to fumes, dusts, gases, odors, or poor ventilation.

(R. 20.)

At step four, the ALJ concluded that Ferguson could not perform any past relevant work. (R. 23.) The ALJ's analysis advanced to step five where she stated that:

> considering the claimant's age, education, work

-2-

experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform.

(R. 24.) Accordingly, the ALJ concluded that Ferguson was not disabled and was therefore not entitled to disability benefits under Title II of the Act. (R. 23.) On June 16, 2018, the Appeals Council denied Ferguson's request for review, making the ALJ's decision the final decision of the Commissioner. (R. 1.)

Ferguson filed this action on August 14, 2018, seeking review of the ALJ's decision. (ECF No. 1.) In her appeal, Ferguson initially argues that the ALJ erroneously concluded that Ferguson's hearing loss and mental impairments were not severe impairments. (ECF No. 10 at 13.) Ferguson further contends that this created reversible error because the ALJ did not properly consider those non-severe impairments "at the remaining steps of the required sequential evaluation process." (Id.) Next, Ferguson argues that the ALJ improperly weighed the opinion of Rebecca Hamilton, FNP. (Id. at 18.) Finally, Ferguson argues that the ALJ failed to consider "the extreme effect of [Ferguson's] pancreatitis."[1] (Id. at 21.)

## II. CONCLUSIONS OF LAW

**A. Standard of Review**

---

[1] Throughout her brief, Ferguson also contends that the ALJ erred at step five because she relied on the grids and should have instead obtained testimony from a vocational expert. Although Ferguson has not specifically made this argument, the court will address it since it is referenced throughout Ferguson's brief.

Under 42 U.S.C. § 405(g), a claimant may obtain judicial review of any final decision made by the Commissioner after a hearing to which he or she was a party. "The court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g). Judicial review of the Commissioner's decision is limited to whether there is substantial evidence to support the decision and whether the Commissioner used the proper legal criteria in making the decision. Id.; Winn v. Comm'r of Soc. Sec., 615 F. App'x 315, 320 (6th Cir. 2015); Cole v. Astrue, 661 F.3d 931, 937 (6th Cir. 2011); Rogers v. Comm'r of Soc. Sec., 486 F.3d 234, 241 (6th Cir. 2007). Substantial evidence is more than a scintilla of evidence but less than a preponderance, and is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Kirk v. Sec'y of Health & Human Servs., 667 F.2d 524, 535 (6th Cir. 1981) (quoting Richardson v. Perales, 402 U.S. 389, 401 (1971)).

In determining whether substantial evidence exists, the reviewing court must examine the evidence in the record as a whole and "must 'take into account whatever in the record fairly detracts from its weight.'" Abbott v. Sullivan, 905 F.2d 918, 923 (6th Cir. 1990) (quoting Garner v. Heckler, 745 F.2d 383, 388 (6th Cir. 1984)). If substantial evidence is found to support the

Commissioner's decision, however, the court must affirm that decision and "may not even inquire whether the record could support a decision the other way." Barker v. Shalala, 40 F.3d 789, 794 (6th Cir. 1994) (quoting Smith v. Sec'y of Health & Human Servs., 893 F.2d 106, 108 (6th Cir. 1989)). Similarly, the court may not try the case *de novo*, resolve conflicts in the evidence, or decide questions of credibility. Ulman v. Comm'r of Soc. Sec., 693 F.3d 709, 713 (6th Cir. 2012) (citing Bass v. McMahon, 499 F.3d 506, 509 (6th Cir. 2007)). Rather, the Commissioner, not the court, is charged with the duty to weigh the evidence, to make credibility determinations, and to resolve material conflicts in the testimony. Walters v. Comm'r of Soc. Sec., 127 F.3d 525, 528 (6th Cir. 1997); Crum v. Sullivan, 921 F.2d 642, 644 (6th Cir. 1990); Kiner v. Colvin, No. 12-2254-JDT, 2015 WL 1295675, at *1 (W.D. Tenn. Mar. 23, 2015).

**B.  The Five-Step Analysis**

The Act defines disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1). Additionally, section 423(d)(2) of the Act states that:

> An individual shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering

-5-

> his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work. For purposes of the preceding sentence (with respect to any individual), "work which exists in the national economy" means work which exists in significant numbers either in the region where such individual lives or in several regions of the country.

Under the Act, the claimant bears the ultimate burden of establishing an entitlement to benefits. Oliver v. Comm'r of Soc. Sec., 415 F. App'x 681, 682 (6th Cir. 2011). The initial burden is on the claimant to prove she has a disability as defined by the Act. Siebert v. Comm'r of Soc. Sec., 105 F. App'x 744, 746 (6th Cir. 2004) (citing Walters, 127 F.3d at 529); see also Born v. Sec'y of Health & Human Servs., 923 F.2d 1168, 1173 (6th Cir. 1990). If the claimant is able to do so, the burden then shifts to the Commissioner to demonstrate the existence of available employment compatible with the claimant's disability and background. Born, 923 F.2d at 1173; see also Griffith v. Comm'r of Soc. Sec., 582 F. App'x 555, 559 (6th Cir. 2014).

Entitlement to social security benefits is determined by a five-step sequential analysis set forth in the Social Security Regulations. See 20 C.F.R. §§ 404.1520 & 416.920. First, the claimant must not be engaged in substantial gainful activity. See 20 C.F.R. §§ 404.1520(b) & 416.920(b). Second, a finding must be made that the claimant suffers from a severe impairment. 20 C.F.R.

§§ 404.1520(a)(4)(ii) & 416.920(a)(5)(ii). In the third step, the ALJ determines whether the impairment meets or equals the severity criteria set forth in the Listing of Impairments contained in the Social Security Regulations. See 20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526. If the impairment satisfies the criteria for a listed impairment, the claimant is considered to be disabled. On the other hand, if the claimant's impairment does not meet or equal a listed impairment, the ALJ must undertake the fourth step in the analysis and determine whether the claimant has the RFC to return to any past relevant work. See 20 C.F.R. §§ 404.1520(a)(4)(iv) & 404.1520(e). If the ALJ determines that the claimant can return to past relevant work, then a finding of not disabled must be entered. Id. But if the ALJ finds the claimant unable to perform past relevant work, then at the fifth step the ALJ must determine whether the claimant can perform other work existing in significant numbers in the national economy. See 20 C.F.R. §§ 404.1520(a)(4)(v), 404.1520(g)(1), 416.960(c)(1)-(2). Further review is not necessary if it is determined that an individual is not disabled at any point in this sequential analysis. 20 C.F.R. § 404.1520(a)(4).

**C. Whether the ALJ's Erred by Failing to Consider All of Ferguson's Impairments Throughout the Five-Step Analysis**

A severe impairment is "any impairment or combination of impairments which significantly limits [a claimant's] physical or mental ability to do basic work activities." 20 C.F.R. §

416.920(c). The Sixth Circuit has stated that "the severity determination is a de minimis hurdle in the disability determination process" meant only to "screen out totally groundless claims." Anthony v. Astrue, 266 F. App'x 451, 457 (6th Cir. 2008) (quoting Higgs v. Bowen, 880 F.2d 860, 862 (6th Cir. 1988) and Farris v. Sec'y of Health & Human Servs., 773 F.2d 85, 89 (6th Cir. 1985)) (internal quotation marks omitted). "[A]n impairment can be considered not severe only if it is a slight abnormality that minimally affects work ability regardless of age, education and experience." Id. (internal citation and quotation omitted).

Ferguson initially argues that the ALJ should have determined that Ferguson's alleged "hearing problems" qualified as a severe impairment. (ECF No. 10 at 14.) In her decision, the ALJ recognized that "September 2015 medical records noted the presence of sensorineural hearing loss with amplification being advised." (R. 18) (citing Exhibit 10F). However, the ALJ noted that since September 2015, "the evidence of record makes little reference to significant hearing concerns." (Id.) The ALJ therefore deemed the hearing condition as a non-severe impairment because "it does not limit [Ferguson's] ability to perform basic work activities." (Id.) This conclusion is supported by the medical evidence within the record. The only piece of evidence in the record demonstrating that Ferguson suffers from hearing problems is the medical record from her September 2015 audiologic examination. (R. 1216-18.)

-8-

Ferguson did not seek any follow-up treatment after this visit. Although she now argues that financial difficulties prevented her from obtaining subsequent treatment (ECF No. 10 at 14), "there is no evidence that [s]he ever sought treatment offered to indigents or was denied medical treatment due to an inability to pay." Moore v. Comm'r of Soc. Sec., No. 14-1123, 2015 WL 1931425, at *3 (W.D. Tenn. April 28, 2015). In addition, there are numerous records where Ferguson indicated that she does not suffer from any hearing related problems. For example, at a March 2016 medical visit Ferguson "specifically denie[d] headaches, vision changes, [and] *hearing loss*." (R. 1223) (emphasis added). Finally, at least one psychologist (Anne M. McSpadden, Ph.D.) and one nurse (Rebecca Hamilton, FNP), who treated Ferguson, indicated that she did not have any hearing related problems. (R. 1090, 2035.) Accordingly, substantial evidence supports the ALJ's conclusion that Ferguson's hearing problems do not amount to a severe impairment.

Next, Ferguson argues that the ALJ erred in determining that Ferguson's "mental impairment[s], including depression and anxiety," did not qualify as severe impairments. (ECF No. 10 at 17.) The ALJ determined that Ferguson's mental impairments did not qualify as a severe impairment because they "do not cause more than minimal limitation in the claimant's ability to perform basic mental work activities." (R. 18.) The ALJ supported this conclusion by describing the medical treatment Ferguson received

between September 2014 and July 2017 for these alleged mental impairments. (Id.) The ALJ ultimately concluded that although Ferguson's earlier records indicate that she suffered from mental impairments, recent medical records show that Ferguson no longer suffers from such impairments. (Id.) Accordingly, substantial evidence exists that supports the ALJ's conclusion that Ferguson's alleged mental impairments do not qualify as severe impairments.

Moreover, even if the ALJ would have erred in finding either of those alleged impairments to be non-severe, no reversible error would exist. When an ALJ determines a claimant's RFC, he "must consider limitations and restrictions imposed by all of [the claimant's] impairments, even those that are not 'severe.'" SSR 96-8p, 1996 WL 374184, at *5 (July 2, 1996); see also 20 C.F.R. § 404.1545(a)(2) ("We will consider all of your medically determinable impairments of which we are aware, including your medically determinable impairments that are not 'severe,' . . . when we assess your residual functional capacity."). "[S]o long as the ALJ considers all of the individual's impairments, the 'failure to find additional severe impairments . . . does not constitute reversible error.'" Kirkland v. Comm'r of Soc. Sec., 528 F. App'x 425, 427 (6th Cir. 2013) (quoting Fisk v. Astrue, 253 F. App'x 580, 583 (6th Cir. 2007)); see also Maziarz v. Sec'y of Health & Human Servs., 837 F.2d 240, 244 (6th Cir. 1987) (holding that the ALJ's failure to classify an impairment as severe was harmless error

because other impairments were deemed severe); Overton v. Comm'r of Soc. Sec., No. 16-2444, 2018 WL 3458495, at *5 (W.D. Tenn. July 18, 2018) ("Because the ALJ is [subsequently] required to consider all of a claimant's impairments (severe and non-severe), '[t]he fact that some of [claimant's] impairments were not deemed to be severe at Step Two is therefore legally irrelevant.'" (quoting Anthony, 266 F. App'x at 457)). Here, the ALJ considered Ferguson's allegations of hearing loss and her alleged mental impairments throughout the decision. (R. 19-23.)

**D.  Whether the ALJ Erred in Weighing Rebecca Hamilton's Opinion**

In formulating an RFC finding, "the ALJ evaluates all relevant medical and other evidence and considers what weight to assign to treating, consultative, and examining physicians' opinions." Eslinger v. Comm'r of Soc. Sec., 476 F. App'x 618, 621 (6th Cir. 2012) (citing 20 C.F.R. § 404.1545(a)(3)); see also Ealy v. Comm'r of Soc. Sec., 594 F.3d 504, 514 (6th Cir. 2010). "An opinion from a treating physician is 'accorded the most deference by the SSA' because of the 'ongoing treatment relationship' between the patient and the opining physician. A nontreating source, who physically examines the patient 'but does not have, or did not have an ongoing treatment relationship with' the patient, falls next along the continuum. A nonexamining source, who provides an opinion based solely on review of the patient's existing medical records, is afforded the least deference." Norris v. Comm'r of Soc. Sec., 461

-11-

F. App'x 433, 439 (6th Cir. 2012) (quoting Smith v. Comm'r of Soc. Sec., 482 F.3d 873, 875 (6th Cir. 2007)) (internal citations omitted).

Ferguson argues that the ALJ improperly weighed the opinion of Rebecca Hamilton, FPN. (ECF No. 10 at 19-20.) Hamilton, who is a nurse practitioner, is not an acceptable medical source. See Brown v. Comm'r of Soc. Sec., 591 F. App'x 449 (Mem), 451 (6th Cir. 2015) ("A nurse practitioner is not an acceptable medical source, but rather falls in the category of other sources."). "The ALJ enjoys broad discretion in evaluating the opinions of non-acceptable medical sources." Davidson v. Comm'r of Soc. Sec., No. 2:16-cv-0102, 2018 WL 4690962, at *5 (M.D. Tenn. July 20, 2018). In discussing Hamilton's opinion, the ALJ stated:

> [t]he undersigned has given greater weight to the opinion of nurse practitioner Rebecca Hamilton who, while not an accepted medical source, has provided the claimant with medical care over much of the relevant period. Ms. Hamilton's opinion is generally consistent with sedentary exertion, but the full extent of opined limitation lacks support. Specifically, the opined extent of bilateral upper extremity manipulative limitation is not consistent with the claimant's orthopedic records, which noted the only residual concerns were manageable and involved the left thumb. Limitation of left upper extremity use to frequent is supported, but a need for significant limitation in the dominant right upper extremity lack support. While Ms. Hamilton's records note neuropathy, they make little to no reference to dysfunction of the hands. Similarly, while noting a need for alternation between sitting, standing, and walking, neither Ms. Hamilton's medical source statement, nor her treatment records, provide a clear basis for this opined requirement. Ms. Hamilton's opinion therefore is given significant weight to the extent consistent with the

>     above residual functional capacity assessment and the
>     evidence of record.

(R. 23) (internal citations omitted). This discussion shows that the ALJ permissibly discounted portions of Hamilton's opinion that were either inconsistent with the record as whole or without any support in the record. See 20 C.F.R. § 404.1527(c)(4) ("Generally, the more consistent a medical opinion is with the record as a whole, the more weight we will give to that medical opinion.") Accordingly, the court concludes that the ALJ's decision to discount portions of Hamilton's opinion is supported by substantial evidence.

**E.  Whether the ALJ Erred in Considering the Effects of Ferguson's Pancreatic Condition**

In her next argument, Ferguson contends that the ALJ failed to consider the extreme effects of her pancreatic condition. (ECF No. 10 at 21.) Although it is not entirely clear what Ferguson is specifically arguing, she seemingly argues that the ALJ erroneously rejected Ferguson's allegations of pain. "An individual's statements as to pain or other symptoms will not alone establish that [she is] disabled." Walters v. Comm'r of Soc. Sec., 127 F.3d 525, 531 (6th Cir. 1997) (internal citation and quotation omitted).  "Rather, there is a two-part test to evaluate a claimant's assertion of disability due to pain." Massey v. Comm'r of Soc. Sec., 409 F. App'x 917, 920 (6th Cir. 2011). "[F]irst the ALJ determines if there is objective evidence of an underlying

-13-

condition which could cause pain, and then the ALJ determines if 'objective medical evidence confirms the severity of the alleged pain arising from the condition, or . . . the objectively established medical condition is of such severity that it can reasonably be expected to produce the disabling pain.'" Lingar v. Berryhill, No. 18-31-DLB, 2019 WL 458402, at *5 (E.D. Ky. Feb. 5, 2019) (quoting Vance v. Comm'r of Soc. Sec., 260 F. App'x 801, 806 (6th Cir. 2008)).

"In determining whether a claimant has disabling symptoms, the regulations require an ALJ to consider certain factors including: 1) daily activities; 2) location, duration, frequency, and intensity of pain or symptoms; 3) precipitating and aggravating factors; 4) the type, dosage, effectiveness, and side effects of any medication; 5) treatment, other than medication, to relieve pain, 6) any measures used to relieve pain, and 7) other factors concerning functional limitations and restrictions due to pain or other symptoms." Stark v. Comm'r of Soc. Sec., No. 5:17-cv-2187, 2019 WL 400606, at *8 (N.D. Ohio. Jan. 31, 2019) (citing 20 C.F.R. § 404.1529(c)); see also Soc. Sec. Rul. 16-3p, 2017 WL 5180304, at *7 ("In addition to using all of the evidence to evaluate the intensity, persistence, and limiting effects of an individual's symptoms, we will also use the factors set forth in 20 C.F.R. 404.1529(c)(3) and 416.929(c)(3)."). "Although the ALJ must consider the listed factors, there is no requirement that the ALJ

-14-

discuss every factor." Stark, 2019 WL 400606, at *8 (internal citation and quotation omitted).

In her decision, the ALJ offered the following discussion of Ferguson's pancreatic condition:

> [r]egarding her pancreatic concerns, these concerns appear to have become significant in early 2016 and were addressed surgically within one year. By January 2017, she reported feeling better with improved diarrhea and no weight loss. While a subsequent treatment note did document complaint of diarrhea and at the hearing she testified to having lost over 50 pounds in less than two months, the extent of her alleged weight loss is inconsistent with her own medical records. Medical records show her weight to have been 162 pounds in July 2015 and 152 pounds in July 2017, with the highest documented weight in this period having been just 181 pounds.

(R. 22-23) (internal citation omitted). Thus, the ALJ concluded that the effects that Ferguson alleged to have suffered from her pancreatic condition were inconsistent with the medical records, as cited in the ALJ's discussion of Ferguson's pancreatic condition. See Ulman v. Comm'r of Soc. Sec., 693 F.3d 709, 714 (6th Cir. 2012) ("As long as the ALJ cited substantial, legitimate evidence to support his factual conclusions, we are not to second-guess[.]"). Accordingly, the ALJ's decision to discount the alleged effects of Ferguson's pancreatic condition is supported by substantial evidence.[2]

---

[2] In a two sentence "argument," Ferguson asserts that "Plaintiff has discussed above the side effects of her multiple required medications. The ALJ erred in failing to take into account these effects." (ECF No. 10 at 21)(internal citation omitted). Ferguson does not explain this argument any further and the court declines

**F. Whether the ALJ's Reliance on the Medical-Vocational Guidelines was Appropriate**

"At step five of the sequential analysis, the Commissioner carries the burden of proving the availability of jobs in the national economy that a claimant is capable of performing." Strimel v. Berryhill, No. 2:16-cv-226, 2017 WL 4127610, at *7 (E.D. Tenn. Sep. 15, 2017). "The Commissioner can accomplish this by employing the grids found at 20 C.F.R. Pt. 404, Subpt. P, App. 2." Amir v. Comm'r of Soc. Sec., 705 F. App'x 443, 451 (6th Cir. 2017). "The grids are composed of rules which specify whether a claimant will be found disabled or not through a particular combination of four factors: exertional capacity, age, education, and previous work experience." Id. Generally, "where a claimant has nonexertional impairments alone or in combination with exertional limitations, the ALJ must treat the Grids as only a framework for decisionmaking, and must rely on other evidence to determine whether a significant number of jobs exist in the national economy that a claimant can perform."[3] Jordan v. Comm'r of Soc. Sec., 548

---

to address it. See Blair v. Berryhill, No. 18-1011, 2019 WL 1379944, at *3 (W.D. Tenn. Mar. 27, 2019) ("This court need not formulate arguments on plaintiff's behalf. . . . And issues raised in a perfunctory manner may be deemed waived." (citing Moore v. Comm'r of Soc. Sec., 573 F. App'x 540, 543 (6th Cir. 2014))).

[3]Exertional limitations are limitations on a person's ability to meet the seven strength demands of sitting, standing, walking, lifting, carrying, pushing, and pulling at the level required by the level of work at issue. 20 C.F.R § 404.1569a(b). Non-exertional limitations affect a person's ability to meet the other demands of jobs and include mental limitations, pain limitations, and all

F.3d 417, 424 (6th Cir. 2008) (citing Burton v. Sec'y of Health & Human Servs., 893 F.2d 821, 822 (6th Cir. 1990)). The Sixth Circuit has also stated that "[t]he Commissioner may meet his burden at step five by referring to the Grids unless the claimant has a 'nonexertional limitation[ ] that significantly limit[s] the range of work permitted by his exertional limitations.'" Collins v. Comm'r of Soc. Sec., 357 F. App'x 663, 670 (6th Cir. 2009) (quoting Cole v. Sec'y of Health & Hum. Servs., 820 F.2d 768, 771 (6th Cir.1987)); see also Maze v. Colvin, No. 16-cv-1138, 2018 WL 3599968, at *6 (W.D. Tenn. July 27, 2018) ("[T]he ALJ [properly] treated the grids as requiring him to find [the claimant] not disabled . . . because the nonexertional limitations the ALJ found [the claimant] to possess did not 'significantly limit the range of work permitted by [her] exertional limitations[.]'" (quoting Collins, 357 F. App'x at 670)).

At step five, the ALJ stated:

> SSR 85-15 notes that limitations of the ability to be exposed to excessive amounts of dust, the ability to crawl, or the ability to kneel have no significant erosive impact on the occupational base at any exertional level. SSR 83-14 and 96-9p note that limitation on the ability to crouch, no less than occasionally stoop, or climbing of ladders, ropes, and scaffolds have no significant erosive effect on the sedentary occupational base. The limitation to frequent handling and fingering in the non-dominant extremity is not considered a significant manipulative limitation for the purposes of SSR 96-9p. SSR 85-15 notes that

---

physical limitations that are not included in the seven strength demands. 20 C.F.R § 404.1569a(c).

there are approximately 200 unskilled jobs at the sedentary exertional level, with each occupation representing numerous jobs in the national economy.

(R. 24.) As the Commissioner correctly argues, "[t]he ALJ specifically addressed the nonexertional limitations in the RFC and cited to SSRs that indicated that limitations to pulmonary irritations, crawling, kneeling, crouching, stooping, and climbing have no erosive impact on the sedentary occupational base." (ECF No. 13 at 23) (citing SSR 83-14, 1983 WL 31254; SSR 85-15, 1985 WL 56857; SSR 96-9p, 1996 WL 374185). Accordingly, it was proper for the ALJ to rely on the grids at step five.[4]

### III. CONCLUSION

For these reasons, the Commissioner's decision is affirmed.

IT IS SO ORDERED.

s/ Tu M. Pham
TU M. PHAM
United States Magistrate Judge

April 11, 2019
Date

---

[4] To the extent Ferguson relies on additional medical evidence from Hamilton that she submitted to the Appeals Council, the court declines to consider those records in evaluating whether substantial evidence supports the ALJ's decision. See Cline v. Comm'r of Soc. Sec., 96 F.3d 146, 148 (6th Cir. 1996) ("[W]here the Appeals Council considers new evidence but declines to review a claimant's application for disability insurance benefits on the merits, the district court cannot consider that new evidence in deciding whether to uphold, modify, or reverse the ALJ's decision."). In addition, this new evidence is not "new and material evidence" that would have altered the ALJ's decision and therefore no reversible error exists. See Bass v. McMahon, 499 F.3d 506, 513-14 (6th Cir. 2007).